HUGO FISCHER, Respondent, *v.* MERCHANTS' DISPATCH TRANSPORTATION COMPANY, Appellant.

### January 2, 1883.

1. JUDGMENT — PRACTICE. — A judgment will be reversed if there is no substantial evidence to support the verdict.

2. COMMON CARRIERS — EVIDENCE. — It is incompetent to show by a carrier the interpretation placed by it on the words "to be forwarded" in its written contract of carriage.

3. —— The words "to be forwarded" in such a contract are not conclusive as to whether the liability is that of a carrier or that of a forwarder.

4. PRINCIPAL AND AGENT. — An agent cannot release himself from duty by delegating his power without his principal's consent.

5. —— COMMON CARRIER. — A common carrier who undertakes to carry cannot make another the consignor's agent for that purpose.

6. EVIDENCE — CONTRACT OF CARRIAGE. — A contract of carriage may be partly written and partly oral, but that which is written cannot be varied by oral testimony.

APPEAL from the St. Louis Circuit Court, HORNER, J. *Reversed and remanded.*

S. M. BRECKINRIDGE, with whom is M. F. WATTS, for the appellant: The only contract between plaintiff and defendant was the one in writing: and when that was shown to exist, all evidence as to what was said between the parties at the time the contract was executed, was improper. — *Murdock* v. *Ganahl,* 47 Mo. 135 ; *O'Bryan* v. *Kinney,* 74 Mo. 125. The instructions are conflicting and inconsistent. — *Modisett* v. *McPike,* 74 Mo. 648 (affirming

*Thomas* v. *Bobb*, 45 Mo. 384) ; *Kernocher* v. *O'Bannon*, 56 Mo. 289.

P. E. Bland and C. A.. Schnake, for the respondent : The question being one of interpretation, all the surrounding facts which throw light on the sense in which the words of the writing were used are admissible. — *Blossom* v. *Griffin*, 13 N. Y. 569 ; *Myrick* v. *Railroad Co.*, 9 Biss. 44. No error in giving instructions is fatal unless the jury has been misled by it. — *Levering* v. *Schnell*, 8 Mo. App. 589 ; *Loefler* v. *Keokuk Northern Line*, 7 Mo. App. 185 ; *Semple* v. *Dennis*, 7 Mo. App. 595. This is the rule, where the error consists in the giving of an erroneous instruction, at the instance of the respondent, conflicting with a sound instruction, given at the instance of the appellant. — *Pratt* v. *Cabanne*, 12 Mo. 194 ; *Severingen* v. *Orne*, 8 Mo. 707 ; *Haskings* v. *Railroad Co.*, 58 Mo. 307 ; *Crutchfield* v. *Railroad Co.*, 64 Mo. 255. The rule is otherwise where an erroneous instruction is given at the instance of the party prevailing, and a sound, or even an unsound, one is given at the instance of the losing party, conflicting with the former instruction. — *Simmons* v. *Carrier*, 60 Mo. 581, 583, 585 ; *Davis* v. *Brown*, 67 Mo. 313.

Bakewell, J., delivered the opinion of the court.

The petition alleges that defendant is a common carrier, and in August, 1874, agreed to carry for plaintiff from St. Louis to New York, a certain amount of gold coin, and therewith to pay the import duty upon some laces and silks belonging to plaintiff, and then to receive these laces from the custom house and carry them to St. Louis and deliver the same to plaintiff at St. Louis, upon payment of its reasonable charges ; that defendant received the goods in good order at New York, and was paid its charges for carriage ; but that, whilst in possession of defendant several packages of lace were abstracted from the package and lost to plaintiff. The petition charges defendant with failure to

perform its duty as a carrier, and asks judgment for the value of the missing goods. The answer was a general denial; and the verdict and judgment were for the plaintiff.

Plaintiff testified on his own behalf to the effect that, in August, 1874, he handed to defendant's agent in St. Louis $250 in gold, with which to pay custom house charges on some laces and silks belonging to plaintiff. These goods plaintiff brought with him as a passenger from London to New York. At New York, the carpet bag in which they were contained was opened and the goods were inspected by the revenue officers. The goods were then replaced in the carpet bag, which was then locked and strapped and left in possession of the revenue officers. Witness then gave a conversation between himself and defendant's agent in St. Louis, to the effect that the agent said that the company would send the money to New York and bring on the goods to plaintiff in St. Louis. This was excluded by the court, on the ground that there appeared to be some written agreement between the parties. Afterwards, against defendant's objection, plaintiff was permitted to state that the agent said he would charge first-class freight rates; that the satchel which had contained the goods was delivered to plaintiff in St. Louis on August 22, 1874, by an expressman, who presented and collected a bill made out in favor of defendant, part of which was for defendant's charges, and part for an advance by defendant on account of deficiency in the weight of the gold sent to New York. At the time he received the satchel, it was not in the condition in which plaintiff had left it in New York. It was locked; but the straps were unbuckled, and one of them gone; and a hand could be inserted where the strap had been. On opening the satchel in the presence of the expressman, the laces in question, the value of which is shown, were found not to be there. Afterwards, defendant's agent said he would inquire about it, and subsequently told plaintiff that

defendant did not carry anything but large freight, and had delivered the satchel to another company for transportation.

No other witness was examined for plaintiff. In his testimony plaintiff had identified the following written instrument : —

" Merchants' Dispatch Transportation Company. Fast freight line. Office, No. 314 N. Third Street. O. R. Morse, agent. St. Louis, August 12, 1874. $232.50, gold. Received from Hugo Fischer, two hundred and thirty-two $\frac{50}{100}$ dollars, gold, same being for duties on one package goods in N. Y. Custom House to be forwarded by M. D. T. Co. Gold sent to W. F. Staunton, secretary. O. R. Morse, agent."

Defendent then introduced testimony to the effect that on August 15th the cashier of defendant in New York received, through the American Express Company, a package of gold from defendant's agent in St. Louis, which was of light weight and was sold for less than its nominal value ; that the proceeds were applied to paying the duty and obtaining the package in question, which was delivered by defendant to the American Express Company, which received the package and agreed to transport it to plaintiff ; and that defendant has always been a transportation company carrying only heavy freight ; that defendant employed a man who acted as broker for consignees and paid duties, and if packages were small and valuable they were always sent by express ; and that the American Express Company was, in 1874, doing an express business, and was of good reputation.

Testimony tending to show the interpretation which would be given by transportation men to the written instrument in evidence was offered and excluded.

We do not think it necessary to set out the instructions given. They were not consistent. In one instruction the jury are told that the American Express Company, which carried the goods, if employed without the authority of

plaintiff, was not the agent of plaintiff, but of defendant; in another instruction they are told that defendant is not liable, unless the goods were lost before delivery to the American Express Company.

Instructions to the effect that the receipt constituted the only contract, and that it created a liability of defendant as forwarder, and not as carrier, were refused.

We think that the judgment must be reversed, for the reason that there is no evidence that the laces were in the satchel when received from the custom house. For all that appears, the goods were gone before the American Express Company received the package, and before defendant received the package at the custom house.

The case must go back for a new trial, and in view of that, it seems to be proper that we should announce our views upon those questions of law presented by the present record, and which are likely to arise upon a second trial.

It is not competent to show by the testimony of carriers or forwarders, or their agents, what interpretation they give to the language of the written instrument in evidence.

The use of the words " to be forwarded," in that instrument, is not conclusive against the liability of defendants as common carriers. "A simple engagement to forward goods at New York, marked for a particular destination, is discharged by shipping the goods by the usual and most direct conveyance to the place designated; but an agreement to forward them from New York to the place of destination, the charge of freight for the whole distance being specified in the agreement, is very different. It is an agreement to carry them for that distance or to be responsible for their safe carriage and delivery at the place designated in the agreement." *Kreuder* v. *Woolcot*, 1 Hilt. 223.

A common carrier who undertakes for himself to perform an entire service has no authority to constitute another person the agent of the consignor or consignee. He may employ an agency, but it must be subordinate to him, and its

acts are considered as done in his service, and as his.    *Bank* v. *Adams Express Co.*, 93 U. S. 174.

The use of the term " forwarding," in the contract, being controlled by the nature and extent of the actual undertaking, and not making defendant, by the mere use of the term, a mere forwarder as to the particular engagement in which it issued (*Read* v. *Spalding*, 5 Bosw. 404 ; 15 Minn. 15 ; 1 E. D. Smith, 120), it is necessary to ascertain what the contract was, and what liability was assumed by defendant, from all the terms of the agreement.    The receipt is not complete, and is only part of an agreement which seems to have been made orally as to a part of it. Of course, no oral testimony could be competent to vary or contradict so much of the agreement as was in writing ; but if an agreement is partly reduced to writing, the parties are not concluded by that fact by the writing so that they cannot show the agreement.    Where the memorandum was " six weeks, two guineas," this was conclusive as far as it went, that is as to the time and rate of hiring, but it did not exclude suppletory matter.    *Jeffery* v. *Walton*, 1 Stark. 267.    Where the agreement is one, and a part of it only reduced to writing, the rest may be proved by extrinsic evidence.    If defendant was a common carrier, and agreed, in consideration of freight for the whole transit to be paid to it by plaintiff, to transport the goods in question from New York to St. Louis, the use of the word " forwarded " in the memorandum given on the receipt of the gold, is not at all inconsistent with such an agreement.

For the reasons stated the judgment is reversed and the cause remanded.    All the judges concur.