ROBERT ECKLES *et al.*, Respondents, v. THE MISSOURI PACIFIC RAILWAY COMPANY, Appellant.

St. Louis Court of Appeals, November 23, 1897.

1. **Common Carrier:** CONTRACT OF AFFREIGHTMENT. A railroad company can not be compelled to transport freight beyond its own line. But when it contracts to do so, it assumes all the obligations of a carrier for the whole route, over the connecting lines as well as its own.

2. ———: ———: CONSTRUCTION. In an action against a railroad for the loss of certain goods delivered to defendant, under a contract of affreightment, for transportation to the place of destination over its line and other connecting lines, where the contract stipulated that the exception from liability made by such other carriers of the goods should operate in the carriage of them respectively, and defendant received pay for the transportation of the goods for the whole route, and its soliciting agent solicited the shipment, and designated the connecting lines over which it would be continued to the place of destination,—*Held:* That it was liable for the loss notwithstanding a stipulation in the contract whereby it attempted to contract against it.

*Appeal from the St. Louis City Circuit Court.*—HON. HORATIO D. WOOD, Judge.

AFFIRMED.

*Martin L. Clardy* and *Henry G. Herbel* for appellant.

The court erred in sustaining plaintiffs' motion for a new trial on account of the refusal of the instructions asked by them. *Nines v. R'y*, 107 Mo. 457; *Dimmitt v. R'y*, 103 *Id.* 433; *Bennett v. R'y*, 46 Mo. App. 668; *Patterson v. R'y*, 56 *Id.* 660; *Minter Bros. v. R'y*, 56 Mo. 287; *Harris v. Howe*, 12 S. W. Rep. 225; *Milling Co. v. R'y*, 41 *Id.* 810.

*G. H. Ten Broek, L. C. Spooner* and *J. M. Holmes* for respondents.

The contract sued on was a through contract for the transportation of the goods in question from South Omaha to Los Angeles, and the clause contained therein limiting the liability of defendant to injuries occurring upon its own road did not change its character. *McCann v. Eddy*, 133 Mo. 59; Hutch. on Car?, sec. 152.

The contract being a through contract, the stipulation limiting liability is void. *Davis v. Jacksonville Line*, 126 Mo. 69, 80; *McCann v. Eddy, supra.*

The defendant having forwarded the goods over a route different from the one agreed on, became an insurer of the goods. Hutch. on Car., secs. 310, 311, 314, 316, 280b, 145; *Goodrich v. Thompson*, 44 N. Y. 344; *Goddard v. Mallory*, 52 Barb. 87; *Commission Co. v. R. R.*, 64 Mo. App. 144; *R. R. v. Boggs*, 40 S. W. Rep. 21; *R'y v. Allison*, 59 Tex. 193; Thomp. on Car. 431; Schoul. on Bail. and Car., secs. 590–594, 600–615.

### APPELLANT'S REPLY.

It does not follow that because the contract of shipment was made with defendant and a through rate given by it, that the contract is necessarily a through contract, where there are express provisions in the contract negativing such a character, as there were in the contract at bar. *Bennett v. R'y*, 46 Mo. App. 668; *McCarty v. R'y*, 9 *Id.* 159; *Goldsmith v. R'y*, 12 *Id.* 479.

The distinctions between the *McCarty-Eddy* case and the one at bar are numerous and radical, and there can be no reason why a contract like this should not be valid, when made where it does not contravene a statute like ours. In any event, no state can control

a shipment like this, which was an interstate shipment, over which congress has exclusive jurisdiction. *Stanley v. R. R.*, 100 Mo. 435; *Grimes v. Eddy*, 126 *Id.* 168; *Selvege v. R'y*, 135 *Id.* 163; *R'y v. Illinois*, 118 U. S. 557.

BLAND, P. J.—The substantive averments of the petition, as amended, are: That defendant owned and operated a railroad running from South Omaha, Nebraska, to Pueblo, Colorado, where it connected with other railroad lines running from said point to the city of Los Angeles, California. That defendant was a common carrier of goods from South Omaha to Pueblo, and by itself and over roads connecting with it at Pueblo on to Los Angeles. That on the fourteenth day of November, 1890, plaintiffs purchased of Swift & Company at South Omaha, one thousand, seven hundred and fifty-six pieces of meat, known to the trade as sweet pickled bellies, at $1,200, and requested Swift & Company to ship the meat to Los Angeles and pay the freight thereon. That Swift & Company, in pursuance of said instruction, made a contract in writing (filed with the petition) by which defendant agreed to transport the goods to Los Angeles for $350, which was then and there paid to the defendant.

That the defendant agreed to transport the goods over its own road to Pueblo, from Pueblo to Trinidad over the Denver & Rio Grande Railroad, and from Trinidad over the Atchison, Topeka & Santa Fe Railroad to Los Angeles. That the goods were loaded into a refrigerator car in good condition; the car iced and delivered to defendant at South Omaha on the fourteenth day of November, 1890. That Swift & Company, on the fifteenth of November, 1890, drew a draft on plaintiffs for the price of the goods, plus the freight, amounting in all to $1,555, which plaintiff

paid. That the goods reached Pueblo over defendant's road on the seventeenth day of November, 1890, and that the goods reached Trinidad on the eighteenth of November, but that the defendant wholly failed and refused to transport the goods further than Trinidad, or to deliver or cause them to be delivered to the Atchison, Topeka & Santa Fe road, or any other carrier at that point for transportation, and for a period of fourteen days failed to forward the goods from Trinidad to Los Angeles. That after the lapse of fourteen days defendant caused the goods to be transported by a connecting carrier other than the Atchison, Topeka & Santa Fe road, and that the goods reached Los Angeles on the fifth day of December, 1890. That during the fourteen days of delay in forwarding the goods from Trinidad, the defendant neglected to ice the car, in which the goods were shipped, and that when they arrived at Los Angeles, the meat was spoiled, soured, and tainted, and was sold for soap grease for the sum of $86. The answer admitted the receipt of the meat from Swift & Company, and that it made the contract in writing with Swift & Company filed with the petition, as an exhibit, but denied that the contract imposed upon defendant the duty of transporting the meat beyond Pueblo, the western terminus of its line, or of forwarding it via other lines of railway to its destination, and avers a performance of its duty by transporting the goods to Pueblo in good condition and on time, and by delivering them to the Denver & Rio Grande Railroad, a connecting line. The contract to carry the goods was as follows:

"Form 1132.—THE MISSOURI PACIFIC RAILWAY.

"SOUTH OMAHA, NEB., Nov. 14, 1890.

"Received from Swift & Company, the following packages, contents unknown, in apparent good order, marked and numbered as per margin, to be transported

from South Omaha to Los Angeles, Cal., and delivered to the consignee, or a connecting carrier. The packages aforesaid may pass through the custody of several carriers before reaching their destination, and it is understood as a part of the consideration, for which the said packages are received, that the exceptions from liabilities made by such carriers respectively shall operate in the carriage by them respectively of said packages, as though herein inserted at length; and especially that neither of said carriers, or either or any of them, or this Company shall be liable for leakage of any kinds of Liquids, nor for losses by bursting of Casks or Barrels of Liquids, arising from expansion or other unavoidable causes; breakage of any kind of Glass, Carboys of Acid, or articles packed in glass, Stoves and Stove Furniture, Castings, Machinery, Carriages, Furniture, Musical Instruments of any kind, packages of Eggs, or for loss or damage of Hay, Hemp, Cotton, or for rust of iron and iron articles, or for loss or damage of any kind on any article whose bulk requires it to be carried on open cars, or for leakage of Grain bulk, or for damages to personal property of any kind, occasioned from delays, from any cause, or change of weather, or for loss or damage by fire, or for loss or damage on seas, lakes, canals, or rivers. And it is further especially understood, that for all loss or damage occurring in the transit of said packages, the legal remedy shall be against the particular carrier in whose custody the said packages may actually be at the time of the happening thereof—it being understood that The Missouri Pacific Railway Company in receiving the said packages to be forwarded as aforesaid, assumes no other responsibility for their safety or safe carriage than may be incurred on its own road. All goods carried by this company are charged at actual

gross weight, excepting such articles as are provided for in our General Tariff.

"All property will be subject to necessary cooperage, and freight is to be paid on the actual gross weight as ascertained by the Company's scales. Carriers will not be accountable for loss in weight of Flour, Grain, Seeds, Feathers, or other goods. Claims for damages must be reported by consignee, in writing, to the delivering line arising from unavoidable causes. Cotton in bales is at the owner's risk of wet or dirt, within thirty-six hours after the consignee has been notified of the arrival of the freight at the place of delivery. If such notice is not there given, neither this Company, nor any of the connecting or intermediate carriers shall be liable. In the event of the loss of property under the provisions of this agreement, the value or cost of the same at the point of shipment shall govern the settlement.

"The carriers reserve the privilege of compressing all cotton signed for on this bill of lading.

"No liability will be assumed for wrong carriage or wrong delivery of goods that are marked with initials, numbered or imperfectly marked.

"Notice. This contract is accomplished and the liability of the Companies as Common Carrier thereunder, terminates on the arrival of the goods or property at the station or depot of delivery, and the Companies will be liable as Warehousemen only thereafter, and unless removed by the consignee from the station or depot of delivery within twenty-four hours of their said arrival they may be removed and stored by the Companies at owner's expense and risk.

"Notice. In accepting this contract, the Shipper or other agent of the owner of the property carried, expressly accepts and agrees to all its stipulations and conditions.

"Consigned to order Swift & Company, Notify Robert Eckles Company at Los Angeles, Cal.

"Weight and classification subject to correction.

| LIST OF ARTICLES. | | WEIGHT. |
|---|---|---|
| Rates Guaranteed $1.75 per 100 lbs. | A. R. T. Car No. 5641 1756 Pcs. S. B. Bellies Freight Prepaid 350.00 | 20,000 |

"Re-ice in transit if necessary.

"Care of D. & R. G. R. R. at Pueblo.

"Care of A., T. & S. F. R. R. at Trinidad, Colo.

"(Signed) J. M. GALLAGHER, Agt. J."

The evidence tends to prove that the car in which the meat was shipped arrived at Pueblo in good order and in due time, and that the meat was in good condition. That it was promptly delivered to the Denver & Rio Grande Railroad, and was by it hauled to Trinidad in due time and delivered on a connecting switch with the Atchison, Topeka & Santa Fe Railroad, which latter had the car switched on one of its sidings, but refused to haul the car, claiming that it should be paid a through rate from the Missouri river to Los Angeles, and that it was the duty of the defendant to have hauled the car to Kansas City, and there deliver it instead of delivering it at Trinidad. A considerable delay was thus occasioned. When the Denver & Rio Grande Railroad ascertained that the Atchison, Topeka & Santa Fe Railroad would not take the car, except upon the condition of payment of a through rate from the Missouri river, it hauled the car back to Pueblo, and there shipped it by other connecting lines to Los Angeles, where it arrived on December 5, 1890. On its arrival the car was immediately opened and the meat found to be soured and tainted, and it was sold for soap grease, being unfit for any other purpose.

The car was not iced at Pueblo, but was well iced when it arrived at Los Angeles. When or by what road it was re-iced does not appear from the evidence.

The court refused the following instructions asked by the respondent:

"1. The court declares the law to be that under the bill of lading or contract sued upon in this action, defendant was charged with the duty of transporting the goods of plaintiff mentioned in the petition from South Omaha to Los Angeles, over its own road to Pueblo, over the Denver & Rio Grande from Pueblo to Trinidad, and over the Santa Fe from Trinidad to Los Angeles, and of re-icing them when necessary during transit, and if the court sitting as a jury finds from the evidence that defendant did not so transport said goods, but transported them, or caused or suffered the same to be transported over a different and longer route, and did not re-ice the same, or cause the same to be re-iced as and when necessary, and further finds that in consequence thereof the said goods reached Los Angeles, and were delivered to plaintiffs in a damaged condition, then the court sitting as a jury will find a verdict for plaintiffs in such sum as from the evidence the court may find that they have sustained by reason of the premises.

"2. The court declares the law to be that under the bill of lading or contract sued upon in this action, the defendant was charged with the duty of transporting the goods of plaintiff mentioned in the petition from South Omaha to Los Angeles over its own road to Pueblo, over the Denver & Rio Grande from Pueblo to Trinidad, and over the Santa Fe from Trinidad to Los Angeles and of re-icing them when necessary during transit, and if the court sitting as a jury finds from the evidence that defendant did not so transport said goods, but transported them, or caused or suffered the

same to be transported over a different and longer route, then the court declares the law to be that the defendant became thereby an insurer of said goods, and is liable in this action to plaintiffs for any injury which the said goods may have received while being transported over any route, or portion of a route, other than that designated in the bill of lading.

"4. The court declares the law to be that the bill of lading or contract sued upon in this action imposed upon the defendant the obligation of transporting the goods of plaintiff mentioned in the petition to Pueblo, of forwarding them from said point to Trinidad, over the D. & R. G., and of forwarding them over the Santa Fe from Trinidad to Los Angeles, and should the court sitting as a jury find from the evidence that defendant did not forward the goods over the Santa Fe from Trinidad to Los Angeles, but forwarded, or caused, or suffered anyone else to forward or transport said goods from Trinidad to Los Angeles over a route other than the Santa Fe, then the court declares the law to be that the defendant thereby became an insurer of the goods, and is liable in this action to plaintiffs for any injuries which the said goods may have received while being transported from Trinidad to Los Angeles; unless the court sitting as a jury shall find from the evidence that defendant was unable to forward the goods over the Santa Fe, owing to the refusal of said road to receive or transport the same. The court, however, declares the law to be that if the court sitting as a jury finds from the evidence that freight from South Omaha to Los Angeles, by the route designated in the bill of lading, was prepaid by plaintiffs to defendant, and that the refusal of the Santa Fe to receive and transport said goods was based upon a dispute with defendant over the portion of the through freight to which it was entitled for such

service, then such refusal affords no defense to defendant for the failure to forward said goods over said road."

A motion for a new trial was filed and by the court sustained, upon the ground that error had been committed by the court on the trial in the refusal of the above instructions, and a new trial was granted. From this order (granting a new trial) the defendant company appealed.

It is satisfactorily shown by the evidence and was conceded on the argument by respondent's counsel that the appellent promptly hauled the car to Pueblo, and there delivered it and its contents in good condition to the Denver & Rio Grande Railroad company. And it is also conceded that if its contract was not to carry through to Los Angeles, it is not liable in this action. The contract having been made in the state of Nebraska, the Missouri statute, section 944, Revised Statutes of 1889, can not be invoked as a rule by which to construe the contract of affreightment. The contract must be construed according to the general American doctrine and effect given to all its terms and conditions (where permissible by law), as they are written in the contract and explained by the pleadings and proofs. A railroad company can not be compelled to transport freight beyond its own line. But it may contract to do so, and where it so contracts it assumes all the obligations of a carrier for the whole route over the connecting lines as well as its own. *Davis v. Jacksonville Southeastern Line,* 126 Mo. 69; *R'y v. Twiss,* 35 Neb. 267. But the mere receipt of freight to be transported beyond the line of the carrier is not sufficient evidence of a contract to carry to the point of destination, and its obligation is discharged by transporting it to the end of its line, and by there

*Common carrier: contract of affreightment.*

delivering it to the next connecting line. *Coates v. Express Company*, 45 Mo. 238; *Crouch v. R'y*, 42 Mo. App. 248; *Pratt v. R. R.*, 95 U. S. 43; Lawson on Contract of Carriers, sec. 246. This is the American doctrine as contradistinguished from the English which has been practically adopted in this state by the enactment of section 944, *supra*. *Dimmitt v. R'y*, 103 Mo. 440.

The contract in the case in hand is not free from difficulties in arriving at the real intention of the parties. The fact that the appellant received pay for transporting the car for the whole route is very persuasive evidence that it undertook to carry the car through over its own and connecting lines. 2 Parsons on Contracts [5 Ed.], p. 231 and foot note 5. *Coates v. Express Company*, *supra*. This fact is also strengthened by the further fact that King, the soliciting agent of the appellant, solicited this shipment of Swift & Company, and designated the Denver & Rio Grande and Atchison, Topeka & Santa Fe railroads as the connecting lines over which the shipment would be continued on to Los Angeles. In the light of these facts there would be no difficulty in pronouncing the contract one for a through shipment, were it not for the following clause found in the contract, to wit: "And it is further especially understood that for all loss or damage occurring in the transit of said packages, the legal remedy shall be against the particular carrier only in whose custody the said packages may actually be at the time of the happening thereof—it being understood that *The Missouri Pacific Railway Company* in receiving the said packages to be forwarded as aforesaid, assumes no other responsibility for their safety or safe carriage than may be incurred on its own road." * * *

*COMMON carrier: contract of affreightment: construction.*

The contention of the appellant is that this clause shows an express agreement not to carry the goods beyond Pueblo. If this clause stood alone and was not qualified by other parts of the contract and by the undisputed and conceded fact that the appellant received the pay for the whole route, this contention might possibly be sustained under the ruling of the court in *Patterson v. R. R.*, 56 Mo. App. 657. But the appellant not only contracted for itself against liability on account of certain losses that might occur in its own line, but also for its connecting lines against liability for like losses, as will appear by the following clause in the first paragraph of the contract, viz.: "The packages aforesaid may pass through the custody of several carriers before reaching their destination, and it is understood as a part of the consideration, for which the said packages are received, that the exceptions from liability made by such carriers respectively shall operate in the carriage by them respectively of said packages, as though herein inserted at length; and especially that neither of said carriers, or either or any of them, or this company, shall be liable for leakage."
* * * If the contract of appellant was to transport to Pueblo only, why interest itself about loss that might occur on any of its connecting lines? What concern was it of the appellant's what might occur to the goods on connecting lines, if it did not contract to transport the goods over such lines? Considering the contract as a whole in connection with the fact that the appellant received the pay for the whole route, the conclusion is irresistible that the contract of appellant was for through shipment, and it follows that the appellant should be held for the loss notwithstanding the stipulation in the contract whereby it attempted to contract against it. *Davis v. Jacksonville Southeastern Line*, 126 Mo. 69; *McCann v. Eddy*, 133 Mo. 69. (The

latter case overrules the *Demmitt* case (103 Mo. 433), in so far as it holds that common carrier for a through shipment over its own connecting lines may contract against loss on account of the negligence of the connecting line.) · The fact that the Atchison, Topeka & Santa Fe Railroad refused to accept the goods, and the appellant or one of its connecting lines, the Denver & Rio Grande Railroad Company, was compelled to forward the goods to their destination over connecting lines, does not relieve the appellant of its obligation to promptly and safely transport the goods to Los Angeles. Nor can the fact that the respondents ordered the goods shipped via the Atchison, Topeka & Santa Fe Railroad be invoked to excuse the appellant or relieve it of liability. The respondents accepted the shipment as made and ratified and adopted the contract by paying Swift & Company the invoiced price of the goods and the prepaid freight charges, without objection. The contract was made for the respondent's benefit, and it does not lie in the mouth of appellants to say that they can not accept it.

In the absence of any proof of an established custom or of an established and uniform practice well understood and acted upon by the shipper and the carrier or of other extraneous facts, in the light of which the contract might have been read, differently from the interpretation we have given it, we are of the opinion that instructions numbers 1 and 2 asked by appellant should have been given. It follows that the action of the court in granting a new trial is affirmed. All concur.