## THOMAS BROTHERS, Respondents, v. ST. LOUIS & SAN FRANCISCO RAILROAD COMPANY, Appellant.

**St. Louis Court of Appeals. Submitted on Briefs January 5, 1915. Opinion Filed February 2, 1915.**

1. **BILLS OF EXCEPTIONS: Appellate Practice: Order and Arrangement of Exceptions.** The fact that the recital in the bill of exceptions of the saving of exceptions to the overruling of a motion for a new trial and a motion in arrest of judgment follows after a recital of the filing of an affidavit for appeal, does not prevent consideration of the exceptions on appeal, although the arrangement is not an orderly one, where it clearly appears that exceptions were taken to the rulings when made.

2. **APPELLATE PRACTICE: Motions for New Trial and in Arrest: Order of Filing and Disposition of Motions.** Where the bill of exceptions, when referring to the motions for a new trial and in arrest of judgment, shows that the motion for a new trial was first filed and then the motion in arrest, and that the court overruled them in that order, the mere fact that the court overruled them by one order is immaterial and does not prevent consideration of the exceptions, on appeal.

3. **COMMON CARRIERS: Interstate Commerce: Supremacy of Federal Law.** The decisions of State courts respecting limitations on a common carrier's common law liability are superseded by the Interstate Commerce Act, so far as concerns interstate shipments.

4. ————: ————: **Limitations on Carrier's Liability: Notice of Loss: Validity of Provisions of Contract.** A contract for interstate transportation of live stock, which declares that the rates for the shipment are lower than if at carrier's risk, that the rates are based on the nature and extent of liability assumed by the carrier, and that the shipper may elect whether to ship under the contract at the lower rate, or at the carrier's risk at a higher rate, and which provides that the carrier will not be responsible for any loss or injury from any defect in the cars, or because the animals are wild, unruly or weak, or maim each other or themselves, that the extent of the carrier's liability, in the event of injury or loss, shall not exceed $100, and that the shipper shall give written notice of his claim, to certain officers or agents of the carrier, before the stock is mingled with other stock and within one day after delivery at desti-

nation, so that the claim may be investigated, is within the Carmack Amendment (Act June 29, 1906, 34 Stat. at Large, p. 593, 4 U. S. Comp. St. 1913, Sec. 8592) to the Interstate Commerce Act (Act Feb. 4, 1887, 24 Stat. at Large, p. 386), and is valid; but matters connected with the execution of the contract may be proved to show its invalidity.

5. ————: ————: ————: ————: ————: **Consideration.** The fact that the rate of carriage is not stated in such a contract is immaterial, since the rate may be supplied, and since, also, the undertaking of the carrier to transport is of itself a sufficient consideration to support the contract.

6. ————: ————: ————: ————: ————: ————. It is not material, so far as concerns the limitation clauses and the clause requiring notice of loss of such a contract, whether the stock was or was not to be carried at a reduced rate.

Appeal from Reynolds Circuit Court.—*Hon. E. M. Dearing*, Judge.

REVERSED AND REMANDED.

*W. F. Evans* and *W. J. Orr* for appellant.

The live stock contract offered in evidence by the defendant is valid under the Interstate Commerce Act and the trial court erred in excluding it. American Silver Mfg. Co. v. Railroad, 156 S. W. 830; Adams Express Co. v. Croninger, 226 U. S. 491; Railroad v. Carl, 227 U. S. 639; Railroad v. Harriman Bros., 227 U. S. 657; 13 Interstate Com. Rep. 550; Railroad v. Mugg, 202 U. S. 242; Hart v. Railroad, 112 U. S. 231; Carr v. Railroad, 194 U. S. 427; Mires v. Frisco Co., 114 S. W. 1052.

*Orchard & Cunningham* for respondent.

(1) The printed abstract of record must show the extension of the time for filing bill of exceptions, giving date of order extending time and to what date the time is extended, and also the date of filing bill of exceptions; this is necessary so that the court can see

whether the bill of exceptions is filed within the time limited, and this is true notwithstanding the amendment to section 2029, R. S. 1909, and the ruling thereon. Dorman v. Coon, 119 Mo. 68; School District y. Boyle, 113 Mo. App. 340; Smith v. Russell, 157 S. W. 813. (2) There is no showing in the abstract of record that any motion for new trial was ever filed during the term and within four days from the rendition of judgment, and this is fatal to the bill of exceptions if any had ever been filed. Smith v. Russell, 157 S. W. 813; Donovant v. Rinn, 170 Mo. App. 73. (3) The so-called bill of exceptions fails to show any objections or exceptions to the action of the court in overruling its motion for a new trial. The bill of exceptions shows by a statement that the motion for new trial was filed and the next entry is that defendant filed its application and affidavit for appeal, then the next order is a motion for new trial and in arrest of judgment are both overruled, then an appeal is granted to the St. Louis Court of Appeals. Then after the appeal was granted and the trial court had no further jurisdiction of the case, the following appears in the bill of exceptions, to-wit: "To which action of the court in overruling its motion for new trial and motion in arrest of judgment, counsel for defendant then and there objected and excepted." This is insufficient to save the exceptions and bring them before this court. Exceptions must be saved to each specific ruling of the court as it occurs during the progress of the trial, and it will not do, as was attempted here, to fail to except when the motion to set aside the nonsuit was overruled, and then seek to cure the omission by a general exception when the motion in arrest is overruled. City of St. Joseph v. Ensworth, 65 Mo. 628; Harrison v. Bartley, 51 Mo. 170; Moran v. Stewart, 246 Mo. 462; McKee v. Jones Dry Goods Company, 152 Mo. App. 241. (4) Under the law and all the rules of pleading a motion for new trial must be filed before a motion in arrest and must

be passed upon by the court before passing on the motion in arrest. Farmers Bank v. Bayliss et al., 41 Mo. 274. (5) Appellant's first contention is that the live stock contract offered in evidence by the defendant is valid under the Interstate Commerce Act and that the trial court erred in excluding it. We are of the contrary opinion; before the defendant can claim any rights under the Interstate Commerce Act it must have complied with all the rules laid down in the act. The courts hold that the railroad company must show a compliance therewith, the statement in the case below cited, we think is the proper rule. American Silver Mfg. Co. v. Railroad, 156 S. W. 813. (6) This contract introduced in evidence is without consideration and void. There is nothing inserted showing what the rate was which is essential, the contract had blanks in the printed contract wherein it was intended. When such contract was really to be made to insert the rate alleged to be "reduced rate" in consideration of which the carrier was to be relieved of its common-law duty, these blanks in this alleged contract were not filled, there is no rate specified, there was no evidence to show what the rate was other than the regular tariff rate (in the case at bar the tariff rate is not mentioned), which is essential. George v. Railroad, 214 Mo. 551; Beshur v. Railroad, 151 Mo. App. 80. (7) Answering the second paragraph in appellant's brief will state that the contract being without consideration, no part of it is binding on the respondent and that clause number 13 requiring notice is not binding on respondent. And this being a common-law action plaintiff does not have to prove a compliance with the contract but it devolves on the defendant who pleads it as a defense to show non-compliance. McNichol v. Pacific Express Co., 11 Mo. App. 401; Brown v. Railroad, 135 Mo. App. 624; Libby v. Railroad, 137 Mo. App. 276.

Thomas Bros. v. Railroad.

REYNOLDS, P. J.—Plaintiffs brought this action to recover for the loss of a mule said to have been injured while being transported by defendant railroad company from Birch Tree, Missouri, to the National Stock Yards, at East St. Louis, Illinois. The ground upon which recovery is claimed is that the car furnished plaintiffs for the transportation of this mule, along with eighteen others, was unsafe and not in proper repair or condition, or so became out of repair in transit, and that one of the slats in the car was broken, or so became broken in transit, and that by reason of the defective car the mule got his leg through the opening caused by the breaking of the slat and thereby breaking its leg, and from which injury the mule died.

The answer, after a general denial, avers that this mule, together with the other mules, was shipped under a special live stock contract filed with the answer, by which contract, as it is averred, defendant undertook and agreed to transport the car containing the nineteen head of mules from Birch Tree to the consignees named at East St. Louis, Illinois. It is further averred that defendant kept and performed each and every condition of the contract on its part; that the contract was voluntarily entered into by plaintiffs and that they had the option of shipping under the contract or of not shipping under the contract; that each and all of the conditions in the contract are based upon the consideration of a lower rate, as in the contract stated. Among the conditions of the contract set out, one is to the effect that the company "will not be responsible for any death, loss, injury sustained by the live stock from any defect in the cars, escape of live stock, or because the live stock are wild, unruly, or weak or maim each other or themselves," etc. Another is that the extent of the company's liability in case of injury or loss should not exceed the sum of $100. Another set out and pleaded as a condition precedent to the

right of recovery is that the shipper "shall give notice, in writing, of his claim, to some general officer of the company, or to the nearest station agent or the agent at destination, and before the live stock is mingled with other live stock, and within one day after its delivery at destination, so that the claim may be properly and fully investigated," and that a failure to comply with this condition should be a bar to the recovery of damages.

The reply sets up, after a general denial, that plaintiffs had no option to enter into any contract with defendant for the shipment of their stock at either a reduced or increased rate; that the contract signed by them was made out by the agent and delivered to them for their signatures and nothing was said in regard to a minimum rate or maximum rate, based on the value of the mules, and that the contract was the same in all respects as is furnished to all shippers from Birch Tree, Missouri, to "St. Louis, Missouri," and that there is no maximum rate or minimum rate fixed therein and none was entered into in this contract. It is further averred that nothing was said between plaintiffs and defendant's agent relative to the value of the mules at the time they were shipped, and no agreement made that the mules were to be valued at not to exceed $100 in consideration of reduced rates, as no reduced rates were agreed upon. Plaintiffs further deny that it was their duty to inspect the cars to ascertain whether they were sound or in good condition or not, the stipulations in said contract to the contrary notwithstanding; that it was the duty of defendant to furnish plaintiffs good and sound cars for the shipment of their stock, and any stipulation or agreement inserted in the shipping contract was void as to these plaintiffs and against public policy. They further deny that the mule which was injured while in transit was injured by the mules being wild or unruly, but aver that the mule was injured by a slat being

broken out of the car, denying that the slat was broken by the mule or by mules in the car. They further deny that it was provided in the contract that in case of liability the value of the stock should be the actual cash value of the same at Birch Tree, Missouri, and in no way to exceed the sum of $100, plaintiffs averring that there was no consideration for any such stipulation and that it was void. So also it is averred that the stipulation as to notice was void as without consideration, and that defendant had waived that condition by entering into negotiations for the settlement of the claim and based its refusal to settle wholly and solely on other grounds than that of not having notice of the claim. This latter fact is pleaded in estoppel against defendant to now set up failure of notice as a defense. Finally, it is averred that any contract or agreement made or attempted to be made, limiting defendant's liability on the shipment, is void, and of no effect; that this shipment being an interstate shipment, defendant could not limit its common-law liabilities over its own line over which the property might pass, and any contract, receipt, rule or regulation that might have been entered into by defendant for the transportation of the mules from Birch Tree, Missouri, to the National Stock Yards, Illinois, limiting these liabilities was in violation of the laws of the United States and therefore void.

. At the trial of the case plaintiff introduced evidence tending to show the shipment of the mule injured, along with eighteen other mules, by the plaintiffs, by way of defendant's railroad, from Birch Tree, Missouri, to the National Stock Yards, Illinois; that the mule referred to was in good order, not vicious, wild or unruly; that when the car containing this mule arrived at the National Stock Yards a slat on the car in which it was being hauled was found to be broken and blood and hair were found on the edges of the broken slat, the hair corresponding to that of the mule;

that this mule had been taken out of the car and removed to a hospital, its leg found to be broken, and that the mule died while in this hospital as a result of its injuries. There was also testimony tending to show that its value at Birch Tree, Missouri, was $190. This is the case for the plaintiffs.

At its conclusion defendant interposed a demurrer, asking for a direction for a verdict. Defendant then offered a deposition, which is not in the abstract, counsel stating that it is not material to the question presented. Defendant thereupon offered the live stock shipping contract referred to in its answer, and which had been identified by one of the plaintiffs as having been signed by him. This was objected to by counsel for plaintiffs as an attempt by defendant to limit its liability, "which cannot be done under the United States law;" that there was no consideration in the contract and nothing mentioned as to how much freight was to be paid or that there was a lower rate or a higher rate, that part of the contract being left blank. There was the further objection that there is no consideration for the basis of any contract, "and under the decisions of the Supreme Court it is absolutely void." The court, without stating upon which of these several grounds it acted, excluded the contract from evidence.

The contract offered is in the abstract before us and it is sufficient to say of it that it contains the stipulations set out in the answer.

At the close of all the evidence, defendant again asked the court to instruct the jury that under the pleadings, the law, and the evidence, their verdict must be for defendant. This was refused. At the instance of plaintiffs the court gave two instructions, defendant excepting, and at the request of defendant it gave one instruction. In the view we take of the case, it is unnecessary to set out any of these.

There was a verdict for plaintiffs in the sum of $190, judgment following, from which defendant has appealed.

The errors assigned are to the refusal to direct a verdict for defendant at the close of plaintiff's evidence and again at the close of all the evidence; to error in refusing to admit in evidence the live stock contract under which the shipment was made; to error in giving the two instructions on the part of the respondents; to error in overruling the motion for new trial; to error in allowing respondents to contradict the provisions of the written contract.

At the threshold of their brief, learned counsel for respondents claim that the bill of exceptions was not filed within time and is not before us. This point is met by a supplemental abstract, duly certified, which shows an extension of time for the filing of the bill of exceptions during vacation and its proper filing within that time.

The abstract is also attacked on the ground, as it is averred, that it does not show that the motion for new trial was filed during the term and within four days after the rendition of the judgment; that the bill of exceptions fails to show any objection or exception to the action of the court in overruling the motions for a new trial; that the bill of exceptions, which is exhibited by respondents, by way of supplemental abstract, shows that exception was first saved to the action of the trial court in overruling the motion for new trial and the motion in arrest, after the appeal had been granted and at a time when the trial court had no further jurisdiction of the case. It is further contended that under our rules of practice, a motion for new trial must be filed before a motion in arrest and must be passed upon by the court before action upon a motion in arrest.

An examination of the bill of exceptions as brought up by counsel for respondents, fails to sus-

tain this contention. It is true that the entry in the bill of exceptions of the exception to the action of the court in overruling a motion for new trial and motion in arrest of judgment follows after the recital of the fact of the filing of the affidavit for an appeal. While this is neither a logical nor orderly arrangement, we do not think it is fatal or supports the contention that exception was not duly saved to the action of the court in overruling these motions, at the time when they were overruled. That this is so, appears by the entry in the bill of exceptions as brought up by respondents, for it is there set out, after reciting the fact of these motions being overruled: "To which action of the court in overruling its motion for new trial and motion in arrest of judgment, counsel for defendant then and there objected and excepted." The fact that this recital appears in the wrong place in the bill of exceptions, is immaterial, inasmuch as it clearly appears that exception was taken to the action by the court when that action occurred. The objections, therefore, of respondents, founded on these alleged errors, are untenable.

Nor do we think there is anything of substance in the point that the record fails to show that the motion for a new trial had been passed on and overruled before the motion in arrest had been acted upon. Counsel for respondent cite Farmers Bank of Missouri v. Bayliss, 41 Mo. 274, l. c. 285, 286, in support of their point. We do not think that this decision bears out their contention. All through the bill of exceptions, when referring to these two motions, it appears that the motion for a new trial was first filed, then the motion in arrest, and the court overruled them in that order. That he did it by one order, is immaterial, as it appears by the order itself that the motions were acted upon and overruled in their proper order.

This brings us to the consideration of the case itself, and as far as that is concerned, it is only neces-

sary to determine one proposition in it. That is the action of the court in excluding the contract under which the shipment was made.

It is true that in some of the earlier decisions of our court and of the Supreme Court, the points made by learned counsel for respondents against the reception in evidence of this contract might have been sustained on the ground that limitations upon the common-law liability of a carrier were not valid unless supported by a consideration. Whether the particular conditions relied upon by appellant are limitations on the common-law liability of a carrier, we need not discuss. As said by our court in American Silver Manufacturing Co. v. Wabash R. R. Co., 174 Mo. App. 184, l. c. 192, 156 S. W. 830, all of the decisions of the courts of our State which announce the rule as to limitations upon a carrier's common-law liability are of no avail in the case of an interstate shipment of the character of the shipment here under consideration, "for the reason the shipment is interstate in character and falls within the purview of the Act of Congress touching interstate commerce." The act referred to is what is generally designated as the "Carmack Amendment," to the 20th section of the original Interstate Commerce Act. The parts of the amendment pertinent are in the seventh section of the Act of Congress of June 29, 1906 (Part I, 34 U. S. Statutes at Large, p. 595, 4 U. S. Compiled Statutes, 1913, section 8592, subdivisions 11 and 12, page 3975, amending section 20 of the Act of Congress approved February 4, 1887, 24 U. S. Statutes at Large, 379), and are as follows:

"That any common carrier, railroad, or transportation company receiving property for transportation from a point in one State to a point in another State shall issue a receipt or bill of lading therefor and shall be liable to the lawful holder thereof for any loss, damage, or injury to such property caused by it or by any common carrier, railroad, or transportation

company to which such property may be delivered or over whose line or lines such property may pass, and no contract, receipt, rule, or regulation shall exempt such common carrier, railroads, or transportation company from the liability hereby imposed: Provided, That nothing in this section shall deprive any holder of such receipt or bill of lading of any remedy or right of action which he has under existing law.

"That the common carrier, railroad, or transportation company issuing such receipt or bill of lading shall be entitled to recover from the common carrier, railroad, or transportation company on whose line the loss, damage, or injury shall have been sustained the amount of such loss, damage, or injury as it may be required to pay to the owners of such property, as may be evidenced by any receipt, judgment, or transcript thereof."

One of the grounds assigned for the exclusion of this contract is that this contract was void; the others that it was without consideration.

In Adams Express Co. v. Croninger, 226 U. S. 491, l. c. 504, it is said by Mr. Justice Lurton, who wrote the opinion of the Supreme Court of the United States, that the significant and dominating features of the Carmack Amendment are:

"First: It affirmatively requires the initial carrier to issue 'a receipt or bill of lading therefor,' when it receives 'property for transportation from a point in one State to a point in another.'

"Second: Such initial carrier is made 'liable to the lawful holder thereof for any loss, damage, or injury to such property caused by it.'

"Third: It is also made liable for any loss, damage, or injury to such property caused by 'any common carrier, railroad or transportation company to which such property may be delivered or over whose line or lines such property may pass.'

188M.A.3

"Fourth: It affirmatively declares that 'no contract, receipt, rule or regulation shall exempt such common carrier, railroad, or transportation company from the liability hereby imposed.'"

It is further held in that case that this legislation by Congress supersedes all the regulations and policies of a particular State upon the same subject; that it embraces the subject of the liability of the carrier under a bill of lading which he must issue and limits his power to exempt himself by rule, regulation or contract, and that when Congress has acted in such a way as to manifest a purpose to exercise its conceded authority, the regulating power of the State ceases to exist. [See, also, Wells, Fargo & Co. v. Neiman-Marcus Co., 227 U. S. 469, and Missouri, Kansas & Texas Ry. Co. v. Harriman, 227 U. S. 657.]

Beyond question the mule said to have been injured was shipped and carried under a contract pertaining to interstate commerce. At the head of this contract, following the name of the railroad company, is this, printed in large letters:

"READ THIS CONTRACT CAREFULLY.
NOTICE.

THIS COMPANY HAS TWO RATES ON LIVE
STOCK.

"The rate charged for shipment of live stock under the following contract is lower than the rate charged if the shipment is not made under the following contract, but at carrier's risk. The rates of freight are based upon the nature and extent of liability assumed by the carrier. The shipper has the right of election whether to ship live stock under this contract at the lower rate, or not under this contract, but at carrier's risk, at a higher rate."

So far from being void or contrary to law, this particular contract is not only one authorized, but one

required by this law. It does not attempt to exempt the carrier from liability for its own negligence. To repeat, it is such a contract as is not only within, but required by, the Carmack Amendment. It is true that the rate per car is not stated, but that is immaterial and can be supplied. That the specific consideration is not set out, is immaterial, for it does appear that the stock is to be transported by the carrier and that is in itself a consideration sufficient to support the contract. Whether the stock was to be carried at a reduced rate or not is immaterial, so far as concerns the clauses of the contract herein relied upon. The contract offered contains the conditions set out in the answer and these have all been held to be lawful conditions and limitations, not upon the liability of the carrier as against its own negligence, but as limitations upon the amount of recovery, conditions for recovery, and the like. Matters connected with the execution of the contract are open to inquiry. So the cases here cited hold. Conditions as to time of presentation in the contract are valid and upheld, if reasonable. [Croninger Case, supra; Clegg v. St. Louis & S. F. R. Co., 203 Fed. Rep. 971; Joseph v. C., B. & Q. R. R. Co., 175 Mo. App. 18, 157 S. W. 837; McElvain v. St. Louis & San Francisco R. R. Co., 176 Mo. App. 379, 158 S. W. 464.]

On the face of it, this is a valid contract. If introduced and read in evidence, as it should have been, appellant surely made out a prima-facie valid defense to the action. It was then open to respondents, plaintiffs below, to have introduced any legal and competent and relevant testimony available tending to overturn it. Their reply sets up a number of defenses which they claim to have to this contract and as to why it is not enforceable against them. Without now deciding whether or not they are valid, and in the absence of any evidence covering them, it is sufficient to say that this contract, like all others, when admitted

in evidence, is open to attack on any legal ground that any contracts may be attacked by parties resisting claims made under them.

So that upon no tangible ground can the action of the trial court in excluding this contract from evidence be sustained.

Appellant's counsel ask us to treat the contract as if in evidence. For the reasons stated, we cannot do that. We cannot anticipate the defense respondent may make as against it, if it is in evidence.

It is sufficient for this case to say that reversible error to the injury of appellant was committed in the exclusion of this contract from evidence. On that ground and for that reason the judgment of the circuit court must be and is reversed and the cause remanded. *Nortoni* and *Allen, JJ.,* concur.