W. M. KEITHLEY and LEE QUINN, Appellants, v. JAMES W. LUSK, W. C. NIXON and W. B. BIDDLE, Receivers for the St. Louis and San Francisco Railroad Company, Respondents.

Springfield Court of Appeals, June 17, 1915.

1. **CARRIERS: Carriers of Goods: Specific Acts of Negligence.** Where plaintiffs sue a carrier for specific negligence in not keeping open the ventilators of a car in which a shipment of apples was made, they must recover on such specific negligence, if recovery is had.

2. ———: ———: **Connecting Carriers: Negligent Damage: Presumptions.** Where goods are delivered in good condition to an initial carrier and are found to be damaged, due to negligence, when delivered by the terminal carrier at destination, and it is not shown which carrier is guilty of negligence, the presumption is that the last carrier has been guilty of the negligence.

3. **CONTRACTS: Interstate Commerce: Governed by Federal Statutes and Decisions.** Concerning the validity of contracts relating to interstate shipments, the Federal interstate commerce act and the decisions of the Federal courts interpreting same, control.

4. **CARRIERS: Connecting Carriers: Liability of Through Carrier.** A common carrier becomes liable for the negligent acts of a connecting carrier which it uses in making a through shipment either under an express or implied contract.

5. ———: ———: **Contracting for Transit Beyond Terminus of Line.** While a common carrier cannot be compelled to carry goods beyond the terminus of its own line, it may contract to do so and thus assume all the obligations of the whole route so as to become liable for the delivery at a certain point, and the liability thus attaching at the commencement will continue through the entire transit.

6. ———: ———: **Carmack Amendment: Bill of Lading.** Action against a carrier for damages to shipment of a car of apples. Though no bill of lading for a through shipment was issued, as required by the Federal act, if such shipment was undertaken, the Carmack amendment does not free the initial carrier from liability for the negligence of the connecting carrier.

Keithley and Quinn v. Lusk, Nixon and Biddle.

7. ———: **Through Shipment: Liability: Bill of Lading.** Where defendant carrier issued a bill of lading only to the end of its own line, but undertook to transport a car of apples beyond such terminus, fixing a through rate, there was a through carriage which rendered defendant liable for the negligence of the connecting carrier, the goods being transported to the ultimate destination, the shipper having no contract with the connecting carrier.

8. ———: **Bills of Lading.** A bill of lading issued by a carrier to a shipper does not make the contract, but only evidences it.

9. ———: **Carriers of Goods: Law Applicable.** Action against a carrier for damages to a shipment of apples, the shipment having been made over connecting lines. If at the terminus of the initial line in Arkansas an agreement concerning further transportation over the line of a connecting carrier was had, the destination being another point in the same State, the shipment was intrastate and the statutes of Arkansas would govern.

Appeal from Howell County Circuit Court.—*Hon. W. N. Evans,* Judge.

REVERSED AND REMANDED.

*J. N. Burroughs* for appellants.

*W. F. Evans* and *W. J. Orr* for respondents.

STURGIS, J.—This action is prosecuted to recover damages alleged to have been suffered by negligence of defendants as receivers of the St. Louis and San Francisco Railroad Company in transporting a car of apples. The trial court directed a verdict for defendants and plaintiffs have appealed from the judgment thereon.

The petition alleges that the plaintiffs delivered to the defendants at Burnham, this State, the car load of apples to be transported to Jonesboro, Arkansas; that it was agreed with the agent of defendants at Burnham that the car should be billed to Jonesboro and there rebilled to Clarendon, Arkansas; that upon

the arrival of the car at Jonesboro the defendants failed and refused to deliver it to the plaintiffs or to the connecting carrier for transportation to said Clarendon, but held the apples for two days before delivering them to said connecting carrier; that defendants finally undertook by oral agreement and waybill issued by them to transport the car over the connecting carrier to Clarendon; that the defendants negligently and carelessly permitted the ventilators on said car to become closed or permitted them to remain closed while in their possession and that by reason thereof the plaintiffs sustained damages in the sum of $400. The answer is a denial and sets up certain provisions of the bill of lading relative to notice of loss and the basis of computing damages.

Speaking of the railroad managed by the receivers as the defendant, the salient facts with reference to the shipment in question are these: The plaintiffs desired to ship a carload of apples from Burnham, Missouri, a point on defendant's railroad, to Clarendon, Arkansas, a point on the Cotton Belt or St. Louis & Southwestern Railway Company's road; the plaintiffs made this fact known to defendant's agent at Burnham and asked for the freight rate on such car to such point; the rate was given by defendant's agent at Burnham as thirty-one cents per hundred; the defendant then provided a car for plaintiffs' use, and same was loaded with apples and accepted by defendant for shipment.

This is what plaintiff Keithley says occurred at Burnham: "Q. To what point were you seeking to ship this car? A. I was intending to take it to Clarendon, Arkansas. The agent at Burnham instructed me to bill to Jonesboro, and he said we could pay the freight at destination at Clarendon, Arkansas. He gave us the tariff as thirty-one cents per hundred through to Clarendon. Said we could bill to Jonesboro, and that the Frisco would rebill the car from there and

send it on to Clarendon and that the freight could be paid there.''

The bill of exceptions shows a ''Shipping Order'' issued by defendant's agent at Burnham, Missouri, for the property designating same as ''Bulk G. Apples.'' This shipping order recites: ''For use in connection with the Standard form of Straight Bill of Lading approved by the Interstate Commerce Commission by Order No. 787 of June 27, 1908.''

It contains certain stipulations on the back thereof relative to the basis of computing loss or damages and as to giving notice of any claim for loss or damages, which defendant alleges to be in the bill of lading. It will be taken for granted that the bill of lading was issued and conforms to this shipping order. Nothing further is shown in this record as to any other bill of lading being issued or its contents. The shipping order designates the point of destination as Jonesboro, Arkansas, a junction point of the defendant's road and the Cotton Belt. When the car in question reached Jonesboro, Arkansas, one of the plaintiffs saw defendant's agent there and tried to pay the through freight from Burnham, Missouri, to Clarendon, Arkansas, but the agent there informed him that the rate was much higher than that given plaintiffs by the agent at Burnham and demanded about twice that amount. The plaintiffs, not having the ready money to pay the amount demanded at Jonesboro, had to go to another town to procure it. This caused a delay of two days. Defendant's agent at Jonesboro, although plaintiffs then had the amount he demanded for the through freight and offered to pay it, finally agreed to have the car forwarded to Clarendon and let the agent there determine the through rate and the amount of freight due. The car then went forward over the Cotton Belt road and plaintiffs paid the freight at Clarendon for the through shipment from Burnham to that point. Plaintiffs say the amount so paid was the rate and

amount named by defendant's agent at Burnham and not that demanded by defendant's agent at Jonesboro. Plaintiffs never dealt with the Cotton Belt Company in any manner in reference to this shipment except to pay its agent at Clarendon the through freight from Burnham and they did this at the direction of defendant's agent. If any receipt or bill of lading was issued by the Cotton Belt Company it was not to plaintiffs. The plaintiffs' dealings and contract with reference to the shipment in question were all with defendant's agents at Burnham and Jonesboro.

We quote what plaintiff Quinn says took place at Jonesboro: "I looked after the forwarding of the apples to Clarendon. No freight had been paid on them, and I applied to the agent of the Frisco at Jonesboro to arrange for shipping them on to Clarendon. We had the rate that the agent at Burnham had given us to Jonesboro. Q. State what kind of freight charges he demanded in comparison with the rate you had been given? A. It was just about twice what the agent at Burnham told us it would be. I didn't have enough money with me to pay what he demanded, I meant to pay it and collect it back, so I had to go down to Truman to get the money. When I got back it was raised again. I offered to pay it at one time and *did pay it* and he gave it back to me and said he would send it on collect and I could get the agent there to fix it if it was an excessive rate. I was there from the 8th to the 10th of October and it was the last minute he agreed to send it on to Clarendon for the freight to be collected there. The agent finally marked across the bill 'Forwarded to Clarendon.' The car had been there about two days before I could get him to send it on. I asked the agent to turn the car over to me or to the Cotton Belt. I wanted to pay the rate we had agreed on, the rate the agent gave us, but he had nearly doubled that. When we got to Clarendon we paid the freight clear through from Burnham to that place and it was thirty-

one cents a hundred, the same rate that had been given us at Burnham.''

The apples were shipped in a car provided with ventilators which plaintiffs say were open when the car left Burnham and were there sealed so as to remain open. The car was on the road four or five days and when it arrived at Clarendon the ventilators were closed and, on opening the car, the apples were found to be damaged, and decaying caused by want of ventilation. Whether the ventilators were open or closed while the car was at Jonesboro is not shown. The case comes here on a sustained demurrer to plaintiffs' evidence as to defendant's liability, and no question is made but that plaintiffs sustained damages by reason of the negligence of the carrier in closing and not keeping open the ventilators during the shipment.

It is important to keep in mind that the action is based on negligence of the carrier in not properly handling and caring for this property while in its hands. Is defendant responsible for that negligence? The plaintiffs contend that defendant is responsible whether the damage occurred before the apples reached Jonesboro or while the car was delayed at that point, or while being transported from Jonesboro to Clarendon. Defendant denies that it is liable for any damage after the car left Jonesboro, it being then on the tracks of the Cotton Belt road, and that in order to recover plaintiffs must show that the damage occurred before the car left Jonesboro. Defendant disclaims liability for any negligence of the connecting carrier.

Preliminary to this inquiry, we will grant that, as plaintiffs sue for specific negligence in not keeping open the ventilators of the car, they must recover on such specific negligence. [Smith v. Railroad, 177 Mo. App. 269, 164 S. W. 132; Hurst v. Railroad, 117 Mo. App. 25, 37, 94 S. W. 794; Yontz v. Railroad, 174 Mo. App. 482, 160 S. W. 832.] We will also grant that where goods are delivered in good condition to the in-

itial carrier and are found to be damaged, due to negligence, when delivered by the terminal carrier and it is not shown which carrier was guilty of negligence, the presumption is that it is the negligence of the last carrier. [Hurst v. Railroad, supra, l. c. 38; Bockserman v. Railroad, 169 Mo. App. 168, 152 S. W. 389.]

Defendant insists that the whole question here depends on whether the defendant *through its agent at Burnham* made a *valid* contract for through shipment to Clarendon. As this constitutes an interstate shipment, it is also insisted that the Federal Interstate Commerce Act governs the same and that the decisions of the Federal Courts interpreting this act are binding on this and other State courts. We will so grant. It must be kept in mind, however, that this case does not involve freight rates, nor a contract giving one shipper a preference over another, or a claim by plaintiffs arising under a special contract giving them any special privileges. The question of a contract for through shipment has no bearing on the case except as it determines defendant's relation to this property when the damage occurred. It is not so much a question what the law compelled defendant to do in reference to this shipment on receiving it at Burnham or delivering it at Jonesboro, under any contract there made, as it is a question of what defendant did do in reference thereto. We will readily grant that the defendant was under no obligations to agree to ship this car to Clarendon, a point beyond its own line, and we may grant that it made no enforceable contract at Burnham to do so, i. e., we may grant that the bill of lading, which evidences its legal contract, did not require it to ship the car beyond Jonesboro. That, however, does not determine whether it did do so or not, using the connecting carrier for that purpose. The record shows that the car was forwarded to Clarendon over the connecting line without plaintiffs making any contract with the connecting carrier by a bill of lad-

ing or otherwise. This was accomplished by an agreement made by plaintiffs with the agent or agents of defendant on the basis of paying the through rate. If there was nothing obligatory on defendant to carry out the verbal contract made by it at Burnham for a through shipment to Clarendon because the bill of lading issued designated Jonesboro as the point of destination, was there any legal reason why it could not voluntarily recognize and carry out such obligation? Or could defendant not enlarge its strictly contractual duties, even by a new contract, actually carried out, covering the through shipment at a through rate?

That a common carrier becomes liable for the negligent acts of a connecting carrier, which it uses in making a through shipment either under an express or implied contract to do so either for a part or all the profits, is well established. Such is the rule at common law. This question received careful consideration in the case of Cohen v. Railroad, 126 Mo. App. 244, 102 S. W. 1029, under facts very similar to those here except that the goods were shipped from a point in Texas to a point in this State and "reconsigned," on part of the goods after arrival at destination and on part while in transit, to another point involving shipment over a connecting carrier. The fact that the two terminal points were in the same city and only four or five miles distant makes no difference in the principle involved. The damage occurred while awaiting transportation by the connecting carrier or while in its charge. That case did not involve any State or Federal Statute, but was decided with reference to the general law. We quote therefrom: "It is true defendant was not required under the original contract of shipment, to convey them beyond its own lines. . . . Upon so doing (carrying to the end of its own line), defendant's relation to those cars as com-

190MA30

mon carrier ceased and that of warehouseman began. [Hutchinson on Carriers (3 Ed.), secs. 711-710; Pindell v. Railway, 34 Mo. App. 675; s. c. 41 Mo. App. 84; Klass Com. Co. v. R. R. Co., 80 Mo. App. 164; Russell Grain Co. v. Wabash R. R. Co., 114 Mo. App. 488, 89 S. W. 908; Loeb v. R. R. Co., —— Mo. App. —, 85 S. W. 118.] In this State, the rule is well established, however, that while a common carrier cannot be compelled to do so, it may contract to carry goods to a point beyond the terminus of its own lines and thus assume all of the obligations of the whole route so as to become liable for the delivery at such point, and the liability thus attached at the commencement will continue throughout the entire transit. Where it so undertakes to transport the goods throughout to destination, all connecting carriers employed in furthering and completing such transportation become agents of the initial or contracting carrier, for whose defaults the initial or contracting carrier is responsible to the owner of the goods. [Davis v. Railroad, 126 Mo. 69, 28 S. W. 965; Eckles v. Railroad, 112 Mo. App. 240, 87 S. W. 99; Eckles v. Railroad, 72 Mo. App. 296; Lesinsky v. Great Western Dispatch, 10 Mo. App. 134; Davis Clothing Co. v. Merchants Dispatch, 106 Mo. App. 487, 81 S. W. 226; Hendrix v. Railroad, 107 Mo. App. 127, 80 S. W. 970; Hutchinson on Carriers (3 Ed.), secs. 226 to 230.''] See also Milling Co. v. Railroad, 127 Mo. App. 80, 104 S. W. 924, and Eckles v. Railroad, supra, where the liability of the initial carrier for the through shipment is discussed and determined by the common law. It is said in Missouri, K. & T. R. Co. v. Harriman Bros., 227 U. S. 657, 57 L. Ed. 690, that: ''The validity of any stipulation in such a contract which involves the construction of the statute, and the validity of a limitation upon the liability thereby imposed, is a Federal question to be determined under the general common law, and, as such, is withdrawn from the field of State law or legislation.''

Is there anything in the Federal act, known as the Carmack amendment to the Hepburn Act, to prevent the defendant from contracting, or by its acts assuming, the liability of a through shipper and thereby incurring liability for the negligence of the connecting carrier used as its agent in completing a shipment? This act is copied in Thomas Bros. v. Railroad, 188 Mo. App. 22, 173 S. W. 96, to which reference is made. So far as this act affects the point now in hand, the primary object is not to prevent common carriers from assuming or contracting to become through carriers but to prevent them from exempting themselves from the liability of a through carrier in case they do become such. The Supreme Court of the United States, in Adams Express Co. v. Croninger, 226 U. S. 491, 57 L. Ed. 314, said that the dominating features of this act on this point are that: "It (the initial carrier) is also made liable for any loss, damage, or injury to such property caused by 'any common carrier, railroad, or transportation company to which such property may be delivered, or over whose line or lines such property may pass.' It affirmatively declares that 'no contract, receipt, rule, or regulation shall exempt such common carrier, railroad, or transportation company from the liability hereby imposed.' "

The defendant cites many Federal cases, the binding authority of which we concede, to the effect that a plaintiff cannot maintain an action for damages growing out of a violation of a verbal (though same is true of a written) contract of shipment giving to the shipper some special privilege or service not accorded to shippers in general under the uniform bill of lading used by authority of the Interstate Commerce Commission, taken in connection with the published tariffs of the carrier. Such is the case of Atchison, T. & S. F. R. Co. v. Robinson, 233 U. S. 173, 58 L. Ed. 901, involving damages for a violation of a verbal agreement to ship a horse by a certain train when the

tariff schedule and bill of lading used by the railroad company did not afford such privilege to shippers generally. To the same effect is Chicago & A. R. Co. v. Kirby, 225 U. S. 155, 56 L. Ed. 1033, Ann. Cas. 1914A. 501, and Ligon v. Railroad, 184 Mo. App. 187, 168 S. W. 647. These plaintiffs, however, are in no way claiming damages for violation of any special rate or privilege given them or special service to be performed for them. Their damage is for negligence in handling their apples during shipment and every shipper, regardless of contract, is entitled to damages for a negligent handling of his property by the carrier. Defendant is not claiming that if it had issued a bill of lading in the usual form for a through shipment it would or could have contained any stipulation exempting the defendant from liability for this negligence. Nor is there now involved the validity of any stipulation contained in the uniform bill of lading allowed to be used by defendant, such as an agreed valuation or notices to be given in case of loss or damage, as in such cases as Adams Express Co. v. Croninger, 226 U. S. 491, 57 L. Ed. 314, and Kansas City S. R. Co. v. Carl, 227 U. S. 638, 57 L. Ed. 683. In this last case the court said: "The initial carrier, under that provision of the interstate commerce act, as an interstate carrier, *holding itself out* to receive shipments from a point upon its own line in one State to a point in another State upon the line of a succeeding and connecting carrier, came under liability not only for its default, but also for loss or damage upon the line of a connecting carrier in the route. [Atlantic Coast Line R. Co. v. Riverside Mills, 219 U. S. 186, 55 L. Ed. 167, 31 L. R. A. N. S. 7, 31 Sup. Ct. Rep. 164.]"

The last insistence of defendant is that it can be held to the liability of a through carrier only by issuing a bill of lading for a through shipment and this it did not do. It is true that the Federal act requires initial carriers to issue a receipt or bill of lading for

all property received for transportation. On account of other provisions of the act this receipt or bill of lading should contain the point of destination, the rate to be charged and other pertinent provisions. But we cannot assent to the proposition that if a railroad company fails to issue such receipt or bill of lading, when it actually accepts and carries the goods, that it is thereby exempt from liability for its negligence in transporting the same. [Baer Bros. Mer. Co. v. Denver, 7 R. G. R. Co., 233 U. S. 479, 58 L. Ed. 1055, 1062.] No one would claim that, if defendant's own road had extended to Clarendon and it had contracted or undertook in the manner here shown to ship this car to that point but issued a bill of lading only to Jonesboro and the negligence causing the damage occurred after the car left Jonesboro, the defendant would not be liable. The proposition seems too plain for argument, but it is decided in accordance with our views in International Watch Co. v. Delaware, L. & W. R. Co., (N. J.) 78 Atl. 49, and we find no decisions to the contrary, State or Federal. [See Railroad Com. v. Texas & P. R. Co., 229 U. S. 336, 57 L. Ed. 1215, 1218.] As we have noted, there is no evidence of any bill of lading having been issued by any carrier covering the transportation of this car from Jonesboro to Clarendon. The defendant agreed with plaintiffs to have this done and it was done. All the plaintiffs know about the manner of doing it is that defendant's agent at Jonesboro endorsed on what plaintiffs thought was the waybill the words "forward to Clarendon." In this manner the defendant changed the destination of the shipment. Whether this method of enlarging its original contract, or of making a new contract of shipment, is in accordance with the Federal act and the rate schedules filed and established thereunder we need not inquire. It is sufficient that it accomplished the further transportation of the apples under the contract made by plaintiffs with defendant. It was certainly defendant's contract

as plaintiffs dealt with no other carrier. Being defendant's contract, it is liable for the negligence of both itself and the connecting carrier used by it to complete the carriage and this is true under the common law and the State and Federal acts. ''Such agreement was simply an extension of the original contract, and defendant stood responsible for negligent damage to the fruit by its own employees or the employees of any connecting carrier it made use of to complete its contract.'' [Hurst v. Railroad, 117 Mo. App. l. c. 35, 94 S. W. 794.]

This would seem to follow from the fact that any particular bill of lading issued to a particular shipper does not make the contract of shipment but only evidences it. The contract is a general one for all shippers alike, not subject to alteration or change by the shipper or carrier except as the law permits a change applicable to all shippers. Regardless of the terms of any particular bill of lading, the shipper and carrier must take note of the only contract which can be made and that all deviations therefrom are void. [Kansas City S. R. Co. v. Carl, 227 U. S. 638, 652, 57 L. Ed. 683, 688; Illinois Central R. Co. v. Henderson Elev. Co., 226 U. S. 441, 57 L. Ed. 290; Sutton v. Railroad, 159 Mo. App. 685, 140 S. W. 76; Dunne & Grace v. Railroad, 166 Mo. App. 372, 148 S. W. 997.]

Of course, if we regard the transaction had between plaintiffs and defendant's agent at Jonesboro as the making of a new contract for shipment to Clarendon, after the completion of defendant's first contract for carriage from Burnham to Jonesboro, then, as both Jonesboro and Clarendon are in the State of Arkansas, the shipment between those points is intrastate and in no way involves the Federal act. The statutes of Arkansas would then govern, but, not being in evidence, the rule of the common law will be applied and so tested the contract is valid as shown in Cohen v. Railroad, 126 Mo. App. 244, 102 S. W. 1029.

It follows that under plaintiffs' evidence the defendant is liable alike for its own negligent acts and those of the connecting carrier. The cause should, therefore, be reversed and remanded.

*Farrington, J.,* concurs. *Robertson, P. J.,* dissents.