# KEITHLEY AND QUINN, Respondents, v. JAMES W. LUSK, W. C. NIXON, and W. B. BIDDLE, RECEIVERS OF SAINT LOUIS and SAN FRANCISCO RAILROAD, Appellants.

### Springfield Court of Appeals, December 22, 1916.

1. **CARRIERS: Initial and Connecting: Interpretation of Contract: "Through Shipment."** The law favors the interpretation of contracts for shipment over connecting carriers as being for "through shipment" making the initial carrier with whom the contract is made, liable for all damages whether caused by the intial carrier or connecting carrier.

2. ————: ————: **"Through Shipment:" Evidence.** Action against an initial carrier for damage to a carload of apples in transit, the shipment being partly over the line of a connecting carrier. Evidence reviewed and *held* not to show conclusively that the shipment over the connecting line was not under a contract of through shipment.

3. ————: **Interstate Shipment: Bill of Lading.** In the matter of an interstate shipment, governed by the Federal law as interpreted by the Federal decisions, the manner of billing such shipment is not conclusive as to its character, whether a through one or not.

4. ————: **Interstate and Intrastate Shipments: Test for Determining.** Whether a shipment is a through one over both the inital and connecting carrier's lines is to be determined by reference to the intention of the parties touching the continuity of movement from the point of shipment to destination as a single shipment. If through continuity of movement the goods are destined at the time they are started for a point in another state for a single freight charge the shipment is to be regarded as a through shipment though the bill of lading when looked at alone may suggest that it terminates with the initial carrier's road.

5. ————: **Through Shipments: Bill of Lading.** Where there is evidence showing that the parties to a shipment contemplated that it should be a through one, part of which was over a connecting carrier at a given rate covering the whole distance, whether paid to the initial carrier or connecting carrier, then the initial carrier does not, as a matter of law, destroy the character of the shipment as a through one or relieve itself from liability of a through carrier by issuing a bill of lading over its own line merely and itself reconsigning the goods to such connecting carrier under a general clause of its tariff giving reconsignment rights to all shippers.

6. ———: **Interstate Commerce: Contracts: Schedule Provisions.** In interstate Commerce special contracts, either verbal or written, have no validity when not covered by the schedules filed with and approved by the Interstate Commerce Commission.

7. ———: **Through Shipments: Initial and Connecting Carriers: Liability.** Where defendant, initial carrier, undertook in the first instance only to ship goods from a point in Missouri to a point in Arkansas and later at that point made a further agreement with the shipper to continue the shipment to another point in Arkansas at a through rate, using another railroad for that purpose, then such further shipment was intrastate, governed by the common-law or state statutes and the connecting carrier became the agent of the initial carrier to make such shipment and the initial carrier is liable for its negligence.

Appeal from Howell County Circuit Court.—*Hon. W. N. Evans,* Judge.

AFFIRMED.

*W. F. Evans* and *W. J. Orr* for appellants.

STURGIS, J.—This is the second appeal in this case and we refer to 190 Mo. App. 458 for a more detailed statement of the facts. On the former trial the court sustained a demurrer to plaintiff's evidence and directed a verdict for defendants. We reversed and remanded the case holding that plaintiffs' evidence tended to show that their carload of apples shipped from Burnham, Missouri, to Clarendon, Arkansas, was damaged in transit by the fault of defendants as initial carrier, or of the Cotton Belt as connecting and terminal carrier, or by both, in not keeping open the ventilators in the car; that the evidence then presented also tended to prove that defendants are liable for the negligence of the connecting carrier as well as its own negligence in this respect, on the ground that defendants undertook a through shipment of the car of apples to Clarendon, whether such undertaking was initial at the time and place of receiving the car, or by way of enlarging and extending its contract at or before the car reached the terminus of defendants' road at Jonesboro, Arkansas.

On a retrial of this case on the same pleadings plaintiffs' evidence in the same as before and defendants did not attempt to disprove either the fact or cause of plaintiffs' damage. On a trial without a jury the court found for plaintiffs. As on the former trial, the evidence does not clearly show when the ventilators were closed, and defendants maintain that nothing more is shown as to which carrier was negligent than that the apples were properly loaded at Burnham, Missouri, with ventilators then open, and that on their arrival at Clarendon, four days later, the ventilators were closed and the apples rotting and badly damaged. The defendants, as initial carrier, rely on the rule of law that under such facts the presumption is that the damage was done by the last carrier, the Cotton Belt, and that defendants cannot be held liable under the facts as now presented for the negligence of such connecting carrier. We note, however, that the evidence now does show that the car of apples was in defendants' possession three of the four days in transit, being delivered by it to the Cotton Belt less than twenty-four hours before the car arrived at Clarendon in bad condition, and our observation is that good apples do not rot to any great extent in one day, even if in an air-tight enclosure. The evidence also shows that this car was needlessly delayed at Jonesboro for at least two days because the defendants' agent there was demanding excessive freight.

We may also here remark that the law and courts, both State and Federal, favor the making and interpretation of the contracts for shipments over connecting carriers as being for through shipment and making the initial carrier with whom the contract is made liable for all damage whether caused by such initial carrier or connecting carrier. This is rightly so, as illustrated by the present case, since it is almost impossible for a shipper, who parts with his property in good condition and, having no control over or knowledge of it during transit, finds it damaged when delivered to him at the end of a long journey, to ascertain the exact time and place of the

injury or by which carrier inflicted. Moreover, to sue a connecting carrier often necessitates going to a foreign jurisdiction to do so.

The evidence introduced at this trial by defendants is that of its agent at Burnham, the initial point of shipment and its agent at Jonesboro, the terminus of defendants' road. This evidence has to do solely with the contention of defendants that it transported the apples under its bill of lading from Burnham to Jonesboro only, where the car was reconsigned over the Cotton Belt to Clarendon, and that consequently it is not liable for any damage done on or by that road. We do not think the evidence conclusively so shows and we are not concerned with its weight. According to the evidence when viewed most favorably for plaintiffs, the fact remains that plaintiffs made known to defendants' agent at Burnham that they desired to ship this car of apples to Clarendon, Arkansas; that both parties knew that defendants' road only extended to Jonesboro, Arkansas, and that from there the car would go over the cotton Belt; that defendants' agent gave plaintiffs the through rate and told them that the freight could be paid at Clarendon, which was done; that defendants' agent instructed plaintiffs to have the car billed to Jonesboro and that defendant would then rebill the car from there and send it on to Clarendon and the freight could be paid there. Defendants' agent at Burnham, while testifying that he billed the car only to Jonesboro because plaintiff said to do so after he had explained the tariffs, rates, reconsignment, etc., also says that the through rate was the same as the sum of two locals and that he told plaintiffs the car could be reconsigned at Jonesboro under defendants' tariffs. The evidence of defendants' agent at Jonesboro throws little light on the matter. He testified only from the records in his office and said that he had no personal knowledge of what took place at Jonesboro; that whatever was done in recognizing the car was done by the cashier in his office. Plaintiffs' evidence therefore still stands that the only thing they did at Jonesboro was that after seeing the agent about the freight and his

demanding an excessive amount, the defendants' agent said he would forward the car to Clarendon and let plaintiffs pay the freight there, which he did do by marking on the waybill "Forward to Clarendon." The plaintiffs paid the through rate at Clarendon, which was the same as defendants' agent had given them at Burnham. The most salient fact in the case, perhaps, is that plaintiffs never had any contract or dealings with the connecting carrier except to pay the through freight at the end of the shipment. Plaintiffs' dealings with reference to forwarding the freight were exclusively with defendants. If any bill of lading was issued by the Cotton Belt it must have been issued to the defendants. Whatever contract or arrangement there was with the Cotton Belt with reference to its transporting the car to Clarendon, such contract was with the defendants. We are aware, however, in speaking of a contract between shipper and carrier, that there is little, if any, freedom of contract in such cases, and that whatever contract there is must be general and alike to all shippers, and is in fact superimposed on carrier and shipper alike by the law and rules and regulations prescribed thereunder from which neither carrier nor shipper is allowed to depart.

Defendants lay much stress on the fact that the bill of lading issued by it was only to Jonesboro, the end of its line, and that under its published and approved tariffs there is a general provision that defendants would undertake to comply with proper requests for reconsignment where practicable to do so, but without any responsibility in connection therewith. These facts, however, are not conclusive either way whether under the Federal or State law. We held on the former appeal that, granting that the shipment, being an interstate one, is governed by the Federal law as interpreted by the Federal decisions, yet the manner of billing a shipment is not conclusive as to the character of such shipment, whether a through one or not. A review of the authorities convinces us of the correctness of that conclusion, and that the whole evidence justifies a finding that this was a through shipment by defendant, notwithstanding the bill of lading was only

to Jonesboro and its tariffs provided for a reconsignment on proper request of any shipper. It seems that the real test is whether the parties intended that there should be a continuity of movement of the freight from the one place to the other—a continuous or single shipment not ending until the goods arrived at the place of destination; that the initial carrier undertakes to have the goods forwarded to destination without the shipper having to make any new or intervening contract with the connecting carrier. In determining whether a shipment of goods from Leesville, Louisiana, which were in fact delivered by the shipper to the purchaser at Shrevesport in that State, but for further shipment to Parsons, Kansas, was an interstate or intrastate shipment, the court, in Louis Werner Sawmill Co. v. Kansas City Southern Ry. Co., 186 S. W. 1118, said: "It is true the mere accident of billing is not decisive, and the fact that the billing was issued from Leesville, Louisiana, to Parsons, Kansas, may be put aside entirely. However, though such be true, the shipment, whether intrastate or interstate, is to be determined by reference to the intention of the parties touching the continuity of the movement from the point of shipment. The petition pointedly avers that both the Missouri, Kansas & Texas Railway Company and plaintiff intended the shipment should be carried as by continuity of movement from Leesville, Louisiana, to Parsons, Kansas. The court pays but slight heed to the billing in matters of this character because of the opportunity for practice of subterfuge which attends it and looks rather to be substance of the transaction as by inquiry touching the intention of the parties to transport the goods into a foreign State or country through continuity of movement which attends or is contemplated in the transaction. Therefore it is said that the shipment takes on the character of either intrastate or interstate commerce at the point the shipment is started. The rule reflected in the authorities is that if, through continuity of movement, the goods are destined at the time they are started for a point in another State, the shipment is to be regarded as interstate commerce, and therefore fall-

ing within the purview of the interstate statutes in respect of rates rather than intrastate, though the billing when looked to alone may suggest the latter.'' [See, also, Texas & N. O. R. Co. v. Sabine Tram Co., 227 U. S. 112, 57 L. Ed. 442, and cases cited; Fuller v. Interstate Commerce, 18; U. S. v. Stock Yards, 57 L. Ed. 226.] We therefore adhere to our former ruling that where there is evidence showing that the parties contemplated a through shipment, part of which was over a connecting carrier, at a given rate covering the whole distance, whole distance, whether paid to the initial carrier or connecting carrier, then the initial carrier does not, as a matter of law, destroy the character of the shipment as a through one or relieve itself from the liability of a through carrier by issuing a bill of lading over its own line only and itself reconsigning the goods to such connecting carrier under a general clause of its tariffs giving reconsignment rights to all shippers. We refer to our former opinion for other authorities sustaining this position.

We also pointed out there and need not again discuss the proposition that this ruling in no way conflicts with the cases cited and relied on by defendants to the effect that in interstate commerce, which this shipment is, special contracts, either verbal or written, have no validity when not covered by the schedules filed with and approved by the Interstate Commerce Commission. Had defendants issued a through bill of lading as a written contract, the rate and result would have been the same and if the defendant chose to make the shipment by issuing a bill of lading over its own line only and then continuing the shipment over the connecting line by marking on the waybill ''Forward to Clarendon'' it should not be held to have thus limited its liability.

We also ruled in our former opinion, citing Cohen v. Railroad, 126 Mo. App. 244, 102 S. W. 1029, that if we view the case on the theory that the defendants only undertook in the first instance to ship the car of apples from Burnham to Jonesboro and later, at the completion of such interstate shipment, did at Jonesboro Arkansas,

as the evidence tends to show, make a further agreement with plaintiffs to continue the shipment to Clarendon, another point in Arkansas, at a through rate, using the Cotton Belt Railroad for that purpose, then such further shipment was intrastate governed by the common law or by State statutes and the connecting carrier became the agent of defendants to make such shipment and defendants are liable for its negligence. To this ruling we also adhere.

The result is that the judgment is affirmed. *Farrington, J.*, concurs; *Robertson, P. J.*, concurs in the result reached.